# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *EMC Mortgage Corp. v. Kemp*, 2012 IL 113419

---

| | |
|---|---|
| Caption in Supreme Court: | EMC MORTGAGE CORPORATION, Appellee, v. BARBARA J. KEMP, Appellant. |
| | |
| Docket No. | 113419 |
| | |
| Filed | December 28, 2012 |
| | |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | There is no appellate jurisdiction to consider challenges to nonfinal orders issued during the pendency of a foreclosure action, prior to entry of an order approving sale and distribution; and no supreme court rule permits the appeal of such orders. |
| | |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Du Page County, the Hon. Robert G. Gibson, Judge, presiding. |
| | |
| Judgment | Appellate court judgment affirmed.<br>Appeal dismissed. |

Counsel on Appeal

David G. Wentz, of Brooks, Tarulis & Tibble, LLC, of Naperville, for appellant.

Edward J. Lesniak and Susan M. Horner, of Burke, Warren, MacKay & Serritella, P.C., of Chicago, for appellee.

Justices

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Thomas, Garman, Burke, and Theis concurred in the judgment and opinion.

Justice Karmeier dissented, with opinion.

## OPINION

¶ 1    The issue in this case is whether appellate jurisdiction exists to consider a challenge to an order issued during the pendency of a mortgage foreclosure action. Because appellate jurisdiction does not exist, we dismiss the appeal.

¶ 2                                Background

¶ 3    In 2005, defendant Barbara Kemp mortgaged property at 1240 Hamilton Lane in Naperville to Maribella Mortgage, LLC, to secure payment of a note from Maribella. Maribella sold the loan to plaintiff, EMC Mortgage Corporation, in early 2006. The loan eventually fell into default, and EMC Mortgage filed, in the circuit court of Du Page County, a complaint to foreclose in July of that year. Over the course of the next two years, Kemp filed a series of counterclaims, all of which were dismissed. EMC Mortgage filed a motion for summary judgment, which was granted in April 2009. The circuit court entered a judgment of foreclosure on June 2, 2009, and EMC Mortgage scheduled a judicial sale in October.

¶ 4    Several weeks later, Kemp unsuccessfully moved for reconsideration of the April summary judgment order and to stay the judicial sale. The sale was later stayed by Kemp's bankruptcy filing. The bankruptcy stay was subsequently lifted, and the sale was rescheduled to October 5, 2010. On the date the property was set for sale, Kemp filed an emergency motion to vacate judgment, erroneously invoking section 2-1401 of the Code of Civil Procedure. In this motion, Kemp argued that *vacatur* of the June 2009 judgment of foreclosure was proper and that once the judgment was vacated, EMC's complaint should be dismissed pursuant to section 2-619 of the Code. Kemp also requested a stay of the sale.

¶ 5    A hearing was held on the emergency motion on October 5, at the conclusion of which the circuit court entered one of the orders that is the subject of this appeal. In the court's order, the court, noting that EMC Mortgage did not object to a stay, granted a 45-day stay of

sale. However, the court denied Kemp's motion to vacate the June 2009 judgment of foreclosure, along with Kemp's motion to dismiss, adding Rule 304(a) language to the order.

¶ 6    Kemp next filed a second motion to reconsider on November 4, 2012. The court denied this motion, again adding Rule 304(a) language to its order, on November 16, 2010.

¶ 7    Kemp appealed. In her notice of appeal, Kemp sought review of the circuit court's October 5 order, which denied her motion to vacate, as well as the court's November 16 order, denying her reconsideration. The appellate court dismissed the appeal for lack of appellate jurisdiction. 2011 IL App (2d) 101175-U.

¶ 8                                              Analysis

¶ 9    The Illinois Constitution confers on the appellate court jurisdiction to hear appeals from all final judgments entered in the circuit court. See Ill. Const. 1970, art. VI, § 6 (providing that appeals "from final judgments of a Circuit Court are a matter of right to the Appellate Court"). The Constitution also grants to this court the right to "provide by rule for appeals to the Appellate Court from other than final judgments." *Id.* Accordingly, absent a supreme court rule, the appellate court is without jurisdiction to review judgments, orders or decrees which are not final. *Flores v. Dugan*, 91 Ill. 2d 108, 112 (1982); *Village of Niles v. Szczesny*, 13 Ill. 2d 45 (1958).

¶ 10    In this case, Kemp appeals from the circuit court's denial of her motion to vacate and her subsequent motion to reconsider that denial. The first problem with Kemp's appeal is that the relief she sought under section 2-1401 is not even available to her, there being no final and appealable order entered in this case yet. See 735 ILCS 5/2-1401(a) (West 2010) (providing that "[r]elief from *final orders and judgments*, after 30 days from the entry thereof, may be had upon petition" (emphasis added)).

¶ 11    It is well settled that a judgment ordering the foreclosure of mortgage is not final and appealable until the trial court enters an order approving the sale and directing the distribution. *In re Marriage of Verdung*, 126 Ill. 2d 542, 555-56 (1989); *Deutsche Bank National Trust Co. v. Snick*, 2011 IL App (3d) 100436; *GMB Financial Group, Inc. v. Marzano*, 385 Ill. App. 3d 978, 982 (2008). The reason such a judgment is not final and appealable is because it does not dispose of all issues between the parties and it does not terminate the litigation. *JP Morgan Chase Bank v. Fankhauser*, 383 Ill. App. 3d 254, 260 (2008); *Marion Metal & Roofing Co. v. Mark Twain Marine Industries, Inc.*, 114 Ill. App. 3d 33, 35 (1983). Specifically, although a judgment of foreclosure is final as to the matters it adjudicates, a judgment foreclosing a mortgage, or a lien, determines fewer than all the rights and liabilities in issue because the trial court has still to enter a subsequent order approving the foreclosure sale and directing distribution. *Fankhauser*, 383 Ill. App. 3d at 260; *King City Federal Savings & Loan Ass'n v. Ison*, 80 Ill. App. 3d 900, 901-02 (1980). Accordingly, it is the order confirming the sale, rather than the judgment of foreclosure, that operates as the final and appealable order in a foreclosure case. *Id.*

¶ 12    A second problem with Kemp's appeal lies with the fact that, while a judgment of foreclosure is a final order, without Rule 304(a) language added to it, the judgment is not appealable. *Verdung*, 126 Ill. 2d at 555-56. Kemp did not seek to make the judgment of

foreclosure appealable under Rule 304(a).

¶ 13   Yet another problem with Kemp's appeal is that the orders Kemp seeks review of—the denial of a motion to vacate based upon an inapplicable section of the Code of Civil Procedure and the denial of its reconsideration—are neither final nor appealable. Had the motion to vacate been properly brought under section 2-1401, Rule 304(b) would have conferred appellate jurisdiction. See Ill. S. Ct. R. 304(b) (eff. Feb. 26, 2010) (allowing appeals from orders granting or denying section 2-1401 relief). Rule 304(b) is, of course, inapplicable here, because Kemp's motion to vacate was premature under section 2-1401.

¶ 14   Kemp concedes all of the above, but contends that the trial judge's inclusion of Rule 304(a) language to its orders of October 5 and November 16 bestows appellate jurisdiction on those orders. This contention is meritless. It is well settled that "the inclusion of the special finding in the trial court's order cannot confer appellate jurisdiction if the order is in fact not final." *Crane Paper Stock Co. v. Chicago & Northwestern Ry. Co.*, 63 Ill. 2d 61, 66 (1976); see also *Martino v. Barra*, 37 Ill. 2d 588, 594 (1967). The circuit court's October 5 denial of Kemp's emergency motion to vacate is not a final order, nor is the November 16 order denying reconsideration of the October 5 ruling.

¶ 15   Kemp's final argument is that she is attempting to attack a void order and that a petition to vacate a void order may be made at any time, in any court, regardless of finality. This contention is also meritless. Generally, a void order can be attacked at any time by a person affected by it. *People v. Flowers*, 208 Ill. 2d 291, 308 (2003). This legal proposition, however, by itself, does not act to confer appellate jurisdiction on a reviewing court if such jurisdiction is otherwise absent. *Id.* Rather, the rule allows a party the ability to always raise the issue of whether an order is void in an appeal where appellate jurisdiction exists and the case is properly before the court of review. *Id.* As we have pointed out, there is no supreme court rule that permits the appeal of the nonfinal orders that Kemp has appealed in this case.

¶ 16                                              Conclusion

¶ 17   The appellate court correctly concluded that appellate jurisdiction is lacking in this case. The judgment of the appellate court is therefore affirmed, and the appeal is dismissed.

¶ 18   Appellate court judgment affirmed.

¶ 19   Appeal dismissed.

¶ 20   JUSTICE KARMEIER, dissenting:

¶ 21   The issue in this case is whether the appellate court had jurisdiction to consider a Rule 304(a) appeal challenging a judgment of foreclosure and sale in residential mortgage foreclosure action. After the case was fully briefed, the appellate court concluded that jurisdiction was lacking and dismissed the homeowner's appeal in an unpublished order pursuant to Supreme Court Rule 23 (Ill. S. Ct. R. 23 (eff. July 1, 2011)). For the following reasons, I would reverse the appellate court's judgment and remand the cause to the appellate court for consideration of the appeal on the merits. I therefore respectfully dissent.

¶ 23     Barbara Kemp purchased a home in Naperville in 2005. To finance the purchase, Kemp took out a mortgage on the property in the amount of $863,200. A company known as Maribella Mortgage, LLC, was named as the lender. Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Maribella, was designated as the mortgagee. The mortgage documents indicated that mortgage was given to secure repayment of an adjustable rate promissory note given by Kemp to Maribella. Correspondingly, the adjustable rate promissory note listed Maribella as the lender.

¶ 24     When Kemp failed to make her scheduled mortgage payments, a company known as EMC Mortgage Corporation (EMC) initiated mortgage foreclosure proceedings in the circuit court of Du Page County. The complaint was filed on July 7, 2006, and included copies of both the mortgage (designated as Exhibit A) and promissory note (designated as Exhibit B). Although the complaint alleged that EMC was the "legal holder, agent or nominee of the legal holder, of the indebtedness," nothing in the mortgage, the promissory note, or the complaint itself explained that company's relationship, if any, to Maribella or MERS, the entities named in the actual mortgage and loan documents.

¶ 25     Kemp initially responded to the complaint by moving to dismiss for lack of *in personam* jurisdiction. That motion was subsequently stricken, and the court granted EMC leave "to issue an alias summons *nunc pro tunc*." After being granted additional time to plead, Kemp filed a *pro se* answer in which she expressly denied EMC's allegation that it was the "legal holder, agent or nominee of the legal holder, of the indebtedness." Kemp also initiated discovery.

¶ 26     Kemp subsequently filed a *pro se* counterclaim challenging the inclusion of Kemp's husband in the mortgage documents. EMC moved to dismiss, arguing that Kemp's counterclaim failed to set forth any facts or legal theories under which EMC could be held responsible for the wrongful conduct and damages alleged by Kemp. EMC's motion was granted, and the court dismissed the counterclaim with leave to amend.

¶ 27     When Kemp elected to file an amended counterclaim, EMC moved to dismiss and for imposition of sanctions. In support of its motion, EMC submitted an affidavit from one of its assistant vice presidents, Ashley Stephenson, attesting that EMC had no involvement in the origination or funding of Kemp's loan and that, in fact, Maribella had not assigned the subject loan to EMC until December 29, 2006, more than five months after EMC filed this foreclosure action. A copy of the written assignment was appended. Although it was not executed until January 12, 2007, the document confirmed that December 29, 2006, was when EMC, described by Stephenson as "a mortgage banking company that specializes in the acquisition, securitization, servicing and disposition of residential loans," had first acquired Kemp's loan from Maribella.[1]

---

[1] The original promissory note executed by Kemp was endorsed in blank by Maribella's treasurer. The endorsement, which is undated, was presumably added in anticipation of a sale and transfer of the mortgage by Maribella to some other party. As just indicated, however, Stephenson's sworn statement established that EMC did not acquire Kemp's loan from Maribella until December

¶ 28    Kemp, through her attorneys, responded to EMC's motion to dismiss the amended counterclaim. In that response, Kemp asserted that EMC could not avoid responsibility for the wrongful acts alleged in the counterclaim on the grounds that it had no role in the loan transaction. The reason for that, Kemp contended, was that while Maribella rather than EMC extended the loan to Kemp, Maribella was acting as EMC's agent in its dealings with Kemp and her husband.

¶ 29    EMC replied to Kemp's response. After taking issue with the legal sufficiency of some of the allegations in Kemp's amended counterclaim, EMC returned to the question of its involvement in the loan transaction. It reiterated that EMC had nothing to do with negotiating the terms of the agreement, preparing the relevant documents, or securing their execution. Because of that, it asserted, it had no culpability, in any capacity, for any of the improprieties alleged by Kemp.

¶ 30    The circuit court granted EMC's motion to dismiss, but once again granted Kemp leave to replead, which she did. EMC, in turn, continued to challenge the sufficiency of Kemp's allegations and the validity of her assertion that it should be held liable for Maribella's actions based on principles of agency. The circuit court once again found EMC's contentions meritorious and dismissed Kemp's second amended counterclaim.

¶ 31    With the counterclaim thus dispatched, EMC moved for summary judgment on its complaint for foreclosure pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2008)). The circuit court granted EMC's motion and, on June 2, 2009, entered a written judgement for foreclosure and sale. Kemp's motion to reconsider was denied, but sale of the subject property was stayed when Kemp filed for bankruptcy. Following various developments not relevant here, including dismissal of the bankruptcy proceedings, a sheriff's sale of the property was scheduled for May 25, 2010. Prior to that date, Kemp successfully moved to continue the sale to give her the opportunity to effectuate a "short sale" of the property. That request was granted, and the sheriff's sale was rescheduled for June 17, 2010. Shortly before that date, Kemp filed another motion to continue, reporting that she had found a buyer for the property and that an application to approve a short sale had been submitted to EMC and was pending. The circuit court denied Kemp's motion and ruled that the sale could proceed. Kemp responded by filing new bankruptcy proceedings, which triggered another automatic stay. An entity now designated as "EMC/Chase Home Finance, LLC," sought and obtained an order from the bankruptcy judge to lift that stay and permit the sale to go forward. With that development, the sheriff's sale was rescheduled for October 5, 2010.

¶ 32    Prior to the October sale date, Kemp filed an emergency motion which, like the motion to reconsider she filed after the court entered its written order in June of 2009, challenged the judgment for foreclosure and sale. Kemp's attack was two-pronged. First, invoking section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2008)), Kemp asserted that the judgment on EMC's complaint for foreclosure should be vacated on the grounds that

of 2006. There is no evidence in the record that EMC possessed any interest in the mortgage and related note prior to that time.

EMC lacked standing. Second, relying on section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2008)), Kemp asserted that because EMC lacked standing, its complaint for foreclosure and sale should be dismissed and the court's written order of foreclosure and sale should be vacated. With respect to both avenues of attack, Kemp contended that, at minimum, the sale should be continued or cancelled until a determination could be made as to the whether EMC is the proper party to bring and maintain these proceedings and to receive the proceeds of any sale.

¶ 33    EMC filed no written objection to Kemp's emergency motion, but a hearing on the motion was held on October 5, 2010. Counsel for EMC was present. EMC's attorney protested the motion on the grounds that Kemp should have pressed her arguments regarding standing earlier in the proceeding. He did not, however, raise any technical objections to the form of the motion, and it is clear that the parties and the court understood that the purpose of the motion was to persuade the court to revisit and set aside its judgment of foreclosure and sale. At the conclusion of the hearing, the court agreed to stay the sale for an additional 45 days, but refused to vacate the judgment of foreclosure and sale and to dismiss. In so doing, the circuit court made an express written finding pursuant to Supreme Court Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)) that there was no just reason for delaying either enforcement or appeal.

¶ 34    Kemp asked the circuit court to reconsider denial of the foregoing motion. As grounds for relief, Kemp again raised the argument, echoing an assertion she had initially made in her answer to the complaint for foreclosure and sale, that the proceedings were fatally defective because EMC did not yet have any legally cognizable interest in the mortgage at the time the complaint was filed.

¶ 35    A hearing on the motion to reconsider was held November 16, 2010. At that hearing, the circuit court acknowledged that Kemp's motion was "well done" and implicated problems with the foreclosure process which had been raised and were pending elsewhere in the United States, but noted that the only case law cited by Kemp for her position were from out of state. "In the absence of an Illinois authority," the court ruled, "the motion [for reconsideration] is denied." As it had in its order, the court then made an express written finding pursuant to Supreme Court Rule 304(a) that there was no just reason for delaying either enforcement or appeal.

¶ 36    Kemp filed a timely notice of appeal. The appellate court entered an order staying sale of Kemp's home pending resolution of the appeal.[2] While the appeal was pending, EMC moved to dismiss for lack of jurisdiction. Kemp filed an objection and the motion was denied.

¶ 37    After the case was fully briefed and taken under advisement, the appellate court reconsidered its position. It determined that it did lack jurisdiction and dismissed the appeal on that basis in an unpublished order entered pursuant to Supreme Court Rule 23 (Ill. S. Ct. R. 23 (eff. July 1, 2011)). 2011 IL App (2d) 101175-U. It is the propriety of that dismissal order that is now before us for review.

---

[2]The appellate court's stay remains in effect.

¶ 38                                    ANALYSIS

¶ 39        Whether the appellate court has jurisdiction to consider an appeal presents a question of law which we review *de novo*. *Gardner v. Mullins*, 234 Ill. 2d 503, 508 (2009); *In re A.H.*, 207 Ill. 2d 590, 593 (2003).

¶ 40        At the core of Kemp's appeal is the propriety of the circuit court's judgment of foreclosure and sale, and its subsequent refusal to set that judgment aside. In order to understand how and when such judgments may be challenged on appeal, it is important to first understand how the foreclosure process works. Under Illinois law, a judgment of foreclosure does not end a mortgage foreclosure case. Upon entry of such a judgment, the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101 *et seq.* (West 2010)) provides for the sale of the property once periods for reinstatement and redemption have expired. 735 ILCS 5/15-1507 (West 2010). Following the sale, the person who conducted it makes a report to the court (735 ILCS 5/15-1508(a) (West 2010)), and, upon motion, the court holds a hearing to confirm the sale (735 ILCS 5/15-1508(b) (West 2010)). At the hearing, a defendant may contest the sale's validity, though on limited grounds. *Id.* Only after confirmation of the sale and payment of the purchase price may the purchaser obtain a deed. 735 ILCS 5/15-1509(a) (West 2010).[3]

¶ 41        The Illinois Mortgage Foreclosure Law does employ the term "*judgment* of foreclosure." (Emphasis added.) See, *e.g.*, 735 ILCS 5/15-1506(a)(2) (West 2010). And courts have sometimes said, somewhat confusingly perhaps, that a judgment ordering foreclosure is "final" as to the matters which must be adjudicated in order for the court to conclude that foreclosure was appropriate. See *King City Federal Savings & Loan Ass'n v. Ison*, 80 Ill. App. 3d 900, 901 (1980). As just noted, however, a judgment ordering foreclosure does not, in fact, dispose of all the issues between the parties and does not terminate the litigation. *JP Morgan Chase Bank v. Fankhauser*, 383 Ill. App. 3d 254, 260 (2008). It remains "modifiable by the trial court" (*Santana v. Zipperstein*, 142 Ill. App. 3d 386, 388 (1986)) and is strictly interlocutory (*In re Hodges*, 350 B.R. 796 (Bankr. N.D. Ill. 2006)). Under settled principles of appellate review, where a judicial ruling leaves matters in controversy unresolved and is interlocutory, it is not "final" for purposes of determining whether it is appealable. *Smith v. Lewis*, 85 Ill. App. 2d 246, 250 (1967).

¶ 42        In foreclosure proceedings such as this one, the court's judgment does not become final and appealable until the sale has occurred and the court has entered orders approving the sale and directing the distribution. *In re Marriage of Verdung*, 126 Ill. 2d 542, 555 (1989); *Deutsche Bank National Trust Co. v. Hall-Pilate*, 2011 IL App (1st) 102632, ¶ 20. Correspondingly, it is the order confirming the sale, not the judgment of foreclosure, that is

---

[3]A mortgagor has the right to reinstate the mortgage by curing all defaults and paying the mortgagee's costs and expenses within 90 days of the date all mortgagors submitted to the jurisdiction of the court. 735 ILCS 5/15-1602 (West 2010). A mortgagor also has a statutory right to redeem the property, a right that expires three months after entry of the foreclosure judgment or seven months after the mortgagor submitted to the jurisdiction of the court, whichever is later. 735 ILCS 5/15-1603(b) (West 2010). Even after the statutory redemption right expires, a mortgagor has an equitable right of redemption until the foreclosure sale. 735 ILCS 5/15-1605 (West 2010).

the final and appealable order in a foreclosure case. *Marion Metal & Roofing Co. v. Mark Twain Marine Industries, Inc.*, 114 Ill. App. 3d 33, 35 (1983). Again, the judgment of foreclosure is merely interlocutory.

¶ 43    Under article VI, section 6, of the 1970 Illinois Constitution (Ill. Const. 1970, art. VI, § 6), litigants are not entitled to appeal from interlocutory orders of the circuit court as a matter of right. Rather, article VI, section 6, vests this court with the authority to provide for such appeals, by rule, as it sees fit. Ill. Const. 1970, art. VI, § 6. Except as specifically provided by those rules, the appellate court is without jurisdiction to review judgments, orders or decrees which are not final. *Almgren v. Rush-Presbyterian-St. Luke's Medical Center*, 162 Ill. 2d 205 (1994); *Flores v. Dugan*, 91 Ill. 2d 108, 112 (1982). Contrary to the majority, however, I believe that the rules of our court do permit review under the circumstances present in this case.

¶ 44    While a judgment ordering foreclosure is not a final judgment for purposes of appeal, it is well established that an aggrieved property owner may nevertheless bring an immediate appeal from a foreclosure judgment where the circuit court has made a written finding under Supreme Court Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)) that there is no just reason for delaying either enforcement or appeal or both. *In re Marriage of Verdung*, 126 Ill. 2d at 555-56; *JP Morgan Chase Bank v. Fankhauser*, 383 Ill. App. 3d at 260.

¶ 45    In this case, the circuit court made such a finding not once, but twice. Although the initial Rule 304(a) finding was not made when the court first entered its judgment of foreclosure, the court did make the requisite finding when Kemper moved unsuccessfully to vacate and dismiss the judgment ordering foreclosure and then again when she sought reconsideration after her motion to dismiss and vacate was denied.

¶ 46    In the appellate court's view, the finding made upon denial of Kemp's motion to vacate and dismiss was ineffective because that motion invoked sections 2-619 and 2-1401 of the Code of Civil Procedure, and various technical obstacles preclude use of Rule 304(a) findings to secure review of orders denying relief under those particular statutory provisions. A majority of this court agrees with the appellate court's approach, focusing, as the appellate court did, on the particular procedural mechanisms Kemp invoked to challenge the judgment of foreclosure rather than the substance of the relief she was requesting.[4] In my view, this approach is misguided in light of the particular circumstances before us.

¶ 47    In previous cases, under similar circumstances, our court has emphasized that the character of the pleading should be determined from its content, not its label. Accordingly, when analyzing a party's request for relief, courts should look to what the pleading contains, not what it is called. *In re Haley D.*, 2011 IL 110886, ¶ 67; *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 102 (2002). In her brief before our court, Kemp urges us to follow that approach here. Although the majority has elected not to address Kemp's argument in its

---

[4]Invocation of section 2-1401 was technically premature, as the majority notes, because there was not yet a final judgment. The problem with reliance on section 2-619, on the other hand, was that it was too late. Under the statute, such motions must be filed "within the time for pleading." 735 ILCS 5/2-619(a) (West 2010). Here, that time had passed.

opinion, I believe the point she makes is meritorious.

¶ 48 An interlocutory order may be reviewed, modified, or vacated at any time before final judgment. *Towns v. Yellow Cab Co.*, 73 Ill. 2d 113, 120-21 (1978); *Kemner v. Monsanto Co.*, 112 Ill. 2d 223, 240 (1986). Accordingly, so long as the circuit court's judgment of foreclosure remained interlocutory in this case, that is, until such time as the court confirmed the actual sale of the property, which it has not yet done, Kemp had the right to ask the circuit court to revisit the judgment and set it aside. *Washington Mutual Bank, F.A. v. Archer Bank*, 385 Ill. App. 3d 427, 432 (2008). That is precisely what she sought to do when she filed her motion to vacate and dismiss. Whatever procedural problems may attend that motion, those issues were not raised by EMC's counsel in the trial court or by the trial court itself, and the objective of the motion was clear and unambiguous to all concerned: to have the court reconsider and reject its prior ruling on the foreclosure judgment. The same is true of Kemp's subsequent motion to reconsider the denial of her motion to vacate and dismiss. We may therefore properly treat both motions as motions to reconsider the judgment of foreclosure.

¶ 49 Kemp's motion to vacate and dismiss did include allegations regarding timeliness and due diligence, criteria necessary to challenge a final judgment under section 2-1401. Those allegations, however, were unrelated to the substance of the relief she requested. They were included simply because Kemp believed, erroneously, that the foreclosure judgment was final and that section 2-1401 was therefore the appropriate procedural mechanism for obtaining the relief she wanted. And while the motion to vacate and dismiss may have challenged the foreclosure judgment on different grounds from those asserted in the original motion to reconsider, that has no bearing whatever on whether it could, itself, qualify as a motion to reconsider.

¶ 50 As set forth above, the circuit court made the express written findings required under Supreme Court Rule 304(a) not only when it denied Kemp's motion to vacate and dismiss on October 5, but also when it rejected her subsequent motion to reconsider that denial on November 16. Our appellate court has repeatedly held that an appeal from an order disposing of a motion to reconsider which contains a Rule 304(a) finding should be treated as having been intended to cover the original judgment (*Relander v. Phoenix Mutual Life Insurance Co.*, 262 Ill. App. 3d 525, 528 (1994)), and that Rule 304(a) language which by its terms refers only to the postjudgment order denying the motion to vacate the original judgment may also be considered as intended to cover that underlying judgment so as to make that order, which was final but unappealable, appealable (*Enblom v. Milwaukee Golf Development*, 227 Ill. App. 3d 623, 628 (1992)). That a Rule 304(a) finding with respect to a motion to reconsider will suffice to bring the underlying order before the appellate court for review was also recently recognized by our own court in *Kaufmann v. Schroeder*, 241 Ill. 2d 194, 197 (2011).

¶ 51 These are sound and reasonable principles, and I see no reason to deviate from them here. Because the requisite Rule 304(a) findings were made by the circuit court following entry of both its October 5 and November 16 orders, because those orders rejected what were tantamount to requests for reconsideration of the underlying judgment of foreclosure, and because Rule 304(a) findings with respect to denial of motions to reconsider are sufficient to render the underlying judgment immediately appealable where, as here, the underlying

judgment is itself of the type which can be immediately appealed under Rule 304(a), I would therefore hold that the appellate court erred when it held that it lacked jurisdiction to consider the merits of this case.

¶ 52   In reaching this result, I do not mean to suggest that recharacterization of parties' motions should be done as a matter of routine. Whether and to what extent recharacterization is appropriate depends on the particular circumstances before us. We must always keep in mind, however, that pleadings are to be liberally construed with a view to doing substantial justice between the parties. See 735 ILCS 5/2-603(c) (West 2010). In my view, the majority fails to heed this overarching principle, elevating form over substance and to no good purpose. As soon as the mandate issues in this case and the matter returns to the circuit court, Kemp will be free to file another motion to reconsider the judgment of foreclosure and sale and denominate it as such. If that motion is denied, as it presumably will be, Kemp may again request that the court make the written findings required by Rule 304(a). There is no reason to believe that the circuit court will hesitate to do so, just has it has not hesitated to do so twice before. Once that occurs, the procedural problems perceived by the majority in this case will be eliminated, and Kemp will be free to proceed immediately back to the appellate court. The case will thus be in precisely the same posture it would be in if we simply acknowledged Kemp's motion to vacate and dismiss and her motion to reconsider that denial for what they were intended to be: a request for the circuit court to reconsider and set aside the underlying foreclosure judgment. The only difference will be that additional time will have passed and the ultimate resolution of this appeal will have been further delayed. In a case that has already been pending for over six years, I struggle to see how such an outcome will serve either the parties or the interests of justice.

¶ 53   Although not mentioned in the majority's opinion, there may be concern that allowing Kemp's appeal to proceed immediately without first remanding to the circuit court may somehow do violence to long-standing rules of appellate jurisdiction. I believe that the foregoing discussion amply demonstrates that such concern is unfounded. Allowing the appeal to proceed on the merits is, in truth, entirely consistent with well-established principles of judicial review. But even if one is unpersuaded by my analysis, there is another alternative that would avoid the need for any discussion of the law at all. In the exercise of our supervisory authority, we could simply vacate the appellate court's unpublished Rule 23 order and order it to consider Kemp's appeal on the merits. Surely that is a better outcome than requiring the parties and the circuit and appellate courts to proceed through additional formalities which are costly, time-consuming and may, in the end, be utterly meaningless.

¶ 54                                           CONCLUSION

¶ 55   For the foregoing reasons, I would reverse the appellate court's judgment and remand the cause to the appellate court with directions to consider Kemp's appeal on the merits. I therefore respectfully dissent.